# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**ALICE MERL SHELLS**                                                                **PLAINTIFF**

**V.**                                                                **CIVIL ACTION NO.: 1:16-CV-62-RP**

**COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Alice Merl Shells has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act. Docket 1. Plaintiff filed an application for benefits on July 25, 2012, alleging disability beginning on August 1, 2000.[1] Docket 7 at 132-37.

The agency administratively denied Plaintiff's claim initially on October 2, 2012, and on reconsideration on January 16, 2013. *Id*. at 65-80, 84-87. Plaintiff then requested an administrative hearing, which Administrative Law Judge (ALJ) Susan Poulos held on August 15, 2014. *Id*. at 91-92, 103-08. The ALJ issued an unfavorable decision on September 26, 2014. *Id*. at 8-23. The Appeals Council denied her request for review on February 16, 2016. *Id*. at 1-4. Plaintiff timely filed this appeal from the February 16, 2016, decision, the undersigned held a hearing on December 14, 2016, and it is now ripe for review.

---

[1] On August 15, 2014, Plaintiff moved to amend the alleged onset date to July 24, 2012, and the ALJ granted the motion. Docket 7, p. 11, 32.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Docket 10.

## I. FACTS

Plaintiff was born September 27, 1973, and was 40 years old at the time of the ALJ hearing. Docket 7 at 34. Plaintiff has a ninth grade education and no past relevant work history. *Id*. at 35, 38-39. Plaintiff contends she became disabled because of pain causing her to suffer from "severe impairments affecting her spine" and also as a result of carpal tunnel syndrome affecting her left hand. *Id*. at 37. Regarding Plaintiff's spinal impediments, Plaintiff specifically claims she suffers from a mild foramina encroachment in her lumbar spine and disk extrusion and fibrosis tear in her cervical spine. *Id*. At the ALJ hearing, Plaintiff testified that she experiences pain in her back, arm, leg, and hip with the most significant pain in her back. *Id*. at 42. She stated that she could walk "maybe half a football field" before experiencing pain in her left hip; she could stand and sit "maybe a couple of hours or so"; and she could lift between five and ten pounds. *Id*. at 45-46. Plaintiff claimed that she could count change or sort things with her left hand despite the effects of carpal tunnel syndrome and that the brace she has been instructed to wear "helps a lot" with the pain. *Id*. at 48-49.

The ALJ established that Plaintiff had not engaged in substantial gainful activity since July 24, 2012, the amended alleged onset date. *Id*. at 13. Next, the ALJ found that Plaintiff experienced the severe impairments of carpal tunnel syndrome and degenerative disk disease but that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). *Id*. at 13, 15.

Considering Plaintiff's severe impairments, ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform light work. *Id*. at 16-17. The ALJ concluded that Plaintiff could "lift and carry twenty pounds occasionally and ten pounds frequently; […] stand and walk a total of six hours out of an eight-hour work day; […] sit six hours of an eight-hour workday; […] occasionally balance, stoop, crouch, kneel, and crawl; […] never climb ladders, ropes or scaffolds and […] occasionally climb ramps and stairs." *Id*. at 16. Further, the ALJ determined that Plaintiff retained the ability to "perform work that allows her to avoid concentrated exposure to workplace hazards, such as unprotected heights, moving machinery, as well as temperature extremes, [… and] vibration." Related to Plaintiff's carpal tunnel syndrome, the ALJ concluded that Plaintiff could "occasionally reach, handle, and finger objects with the left, non-dominant, extremity." *Id*. at 16.

Treating physician Amy Tucker, M.D. considered Plaintiff unable to adequately perform daily activities or work due to her pain and determined that bed rest was medically necessary. *Id*. at 17-18. However, the ALJ found that "the medical records do not reflect substantial limitations from [Plaintiff's] physical conditions to support her allegations of debilitating symptoms." *Id*. at 17. Consequently, the ALJ afforded little weight to Dr. Tucker's medical source statement, finding that Dr. Tucker's opinions are "inconsistent with the preponderance of the objective medical evidence." *Id*. at 17-18.

Consultative examining physician J.C. Adams, M.D. assessed Plaintiff as having the RFC to perform light work with the following restrictions: no restrictions in her ability to sit, stand, and walk; occasional balancing, stooping, crouching, and kneeling but never crawling or climbing; frequent pushing and pulling and occasional handling, fingering and reaching in all directions. *Id*. at 19. Dr. Adams noted that the restrictions he provided are greater than what he

would expect from Plaintiff's conditions. *Id*. at 19. The ALJ afforded significant weight to Dr. Adams's opinions, finding them consistent with the objective medical record. *Id*.

Based on her review of the medical evidence and in conjunction with Plaintiff's allegations, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment" because they are "inconsistent with the preponderance of the objective medical evidence." *Id*. at 21.

The ALJ found that Plaintiff's residual functional capacity to perform the full range of light work is impeded by additional limitations. *Id.* at 22. Having questioned the vocational expert (VE) regarding whether jobs existed in the national economy for an individual of the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ noted the VE's testimony that given those factors, the individual would be able to perform the requirements of occupations such as a cashier, wiper, and bagger. *Id*. The ALJ ultimately ruled that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 24, 2012, the date her application was filed. *Id*.

Plaintiff claims that the ALJ's residual functional capacity conclusion is not supported by substantial evidence and that the ALJ erred as a matter of law in failing to reconcile the key differences between the VE's opinion and information provided in the Dictionary of Occupational Titles (DOT). Docket 12 at 13.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at

---

[2] *See* 20 C.F.R. §§ 404.1520 (2012).

each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal

---

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[4] 20 C.F.R. §§ 404.1520(b) (2012).
[5] 20 C.F.R. §§ 404.1520(c) (2012).
[6] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).
[7] 20 C.F.R. §§ 404.1520(e) (2012).
[8] 20 C.F.R §§ 404.1520(g)(2010).
[9] *Muse*, 925 F.2d at 789.

standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV.  DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed on two separate grounds. Docket 12 at 13. First, Plaintiff claims the ALJ's residual functional capacity conclusion is not supported by substantial evidence because both Dr. Tucker's and Dr. Adams's opinions support a finding of disability. *Id*. at 15-17. Plaintiff argues that the ALJ "substituted her own judgment without the support of substantial evidence and concluded [Plaintiff] was capable of a broader range of work activity than opined by either Dr. Tucker or Dr. Adams." *Id*.

---

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The ALJ assigned limited weight to treating physician Dr. Tucker's opinion finding it was "inconsistent with the preponderance of the objective medical evidence." Docket 7 at 18. Plaintiff argues that before declining to give a treating physician's opinion controlling weight, the ALJ must apply the following factors: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. Docket 12 at 13-14 (citing 20 C.F.R. 404.1527); *see also*, *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The Commissioner responds that the ALJ identified good cause for not affording controlling weight to Dr. Tucker's opinion and properly relied on medical evidence, including Dr. Tucker's treatment records, when assessing Plaintiff's RFC. Docket 14 at 12.

Good cause may exist to allow an ALJ to give lesser weight to evidence from a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000). Dr. Tucker's May 31, 2013, clinical assessment of pain placed limitations on Plaintiff's ability to adequately perform daily activities or work and stated that physical activity—such as walking, standing, sitting, bending, stooping, and moving of extremities—would increase Plaintiff's pain to such a degree that bed rest and/or medication would be necessary. Docket 7 at 291. The Court agrees with the Commissioner that the medical record before the ALJ does not support Dr. Tucker's opinion that Plaintiff was incapacitated due to significant pain. *Id*. at 292. Dr. Tucker's records consistently note Plaintiff's back pain, but do not provide support for her claim that Plaintiff could only stand or walk for one hour during an eight-hour work day. *Id*. On multiple

visits Dr. Tucker documents Plaintiff's gait as "normal" and references Plaintiff's full range of motion. *Id*. at 249, 319, 333, 358, 367, 405. Further, Plaintiff inconsistently reports the duration of her pain and inconsistently rates her level of pain. *Id*. at 262, 271, 277, 311, 331, 336, 343, 347.

Although a treating physician's opinion and diagnosis should be given considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). Further, when declining to give a treating physician's opinion controlling weight, the ALJ is only required to perform a detailed analysis of the treating physician's opinion if there is no reliable medical evidence from another examining physician that controverts the treating physician's opinion. *Newton*, 209 F.3d at 445-7-47; *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012).

The ALJ afforded the consultative examiner Dr. Adams's opinion significant weight finding it was consistent with the objective medical record. Docket 7 at 19. Dr. Adams found that Plaintiff experienced chronic neck and back pain and degenerative disc disease. *Id*. at 18, 368-69. His observations included Plaintiff's display of a normal gait and ability to walk without difficulty, her normal range of motion in all joints with the exception of her left upper extremity, and full sensory ability in her upper and lower extremities. *Id*. at 18, 367-68. The ALJ noted Dr. Adams's opinion that Plaintiff's presentation was not completely valid and that she showed reduced effort during her physical examination. *Id*. at 18, 368, 372. Dr. Adams assessed Plaintiff as having the ability to perform a light range of work with no restriction on her ability to sit, stand, and walk, the occasional ability to balance, stoop, crouch, and kneel but never crawl or

climb, the frequent ability to push and pull, and the occasional ability to handle, finger, and reach in all directions. *Id*. at 370-72.

Plaintiff argues that the ALJ discounted Dr. Adams's findings (despite affording his opinion significant weight) by failing to adopt a bilateral limitation on fingering, handling, and reaching in all directions based on Dr. Adams's findings of reduced grip strength in the upper extremities. At the hearing, Plaintiff argued that Dr. Adams intended this limitation to be bilateral because he did not specify that it was specific only to the left upper extremity. Plaintiff further attempted to assert the existence of a bilateral restriction caused by cervical spine compression by arguing that such a condition could reasonably have a bilateral effect.

The Commissioner responded that Dr. Adams's report references his consultative examination for clarification on the stated restrictions which specifies no joint abnormalities and normal range of motion except for the left arm. The Commissioner pointed out that Dr. Adams similarly found reduced range of motion specific only to Plaintiff's left wrist and moreover, noted "effort a concern." The Commissioner argued, and the Court agrees, that Dr. Adams's records are consistent with treating physician Dr. Tucker's records which contain findings of a full range of motion and little mention of bilateral shoulder pain.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, and in making her determination she must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite her physical and mental limitations. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not establish physical limitations or the lack thereof without medical proof to support such a conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v.*

*Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), unless they are reached by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

Considering all the evidence in the record, the ALJ did not err in failing to adopt a bilateral limitation in Plaintiff's use of the upper extremities. The medical record as a whole, including records from both Dr. Tucker and Dr. Adams, provides substantial evidence supporting the ALJ's conclusions regarding Plaintiff's residual functional capacity. Further, the ALJ did not err in finding that neither Dr. Tucker's nor Dr. Adams's opinions support a finding of disability.

Plaintiff's second ground for reversal of the Commissioner's decision is that the ALJ failed to reconcile differences between the VE's opinion and information provided in the Dictionary of Occupational Titles (DOT) as Social Security Ruling 00-4p requires. Docket 12 at 13, 17-21. At step five of the evaluation process, the Commissioner bears the burden of establishing that there is gainful employment the claimant is capable of preforming considering her RFC, age, education, and past work experience. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The ALJ held that Plaintiff was capable of gainful employment because, despite her existing impairments, she could perform certain light unskilled jobs identified by the VE including occupations such as cashier, wiper, and bagger. Docket 7 at 22.

Plaintiff argues that these specific DOT job listings contemplate the bilateral use of upper extremities and thus are in conflict with the VE's statements that Plaintiff could perform those jobs with the restricted use of her left, non-dominant arm. Docket 12 at 17. At the hearing, Plaintiff called into question the validity of the vocational testimony on which the ALJ relied based on the ALJ's failure to obtain or provide any factual basis or explanation for the VE's

allegedly conflicting opinion. Plaintiff argued that the ALJ is required to resolve inconsistencies with the DOT in her decision and should have given an explanation as to how the stated jobs could be performed with the restricted use of the left upper extremity. The Commissioner responded that this is not a real conflict based on *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), because the DOT does not specify that bilateral use of upper extremities is required. Docket 14 at 14.

Social Security Ruling 00-4p emphasizes that before relying on VE evidence in support of a disability determination, an ALJ must identify and obtain a reasonable explanation for any conflicts between a VE's testimony and information in the DOT. SSR 00-4P (S.S.A. Dec. 4, 2000). Further, an ALJ is required to explain in the decision how any identified conflict was resolved. *Id*. However, the Court agrees with the Commissioner that there is not a conflict between the DOT and VE's testimony; rather, the VE's testimony regarding Plaintiff's limitations is more specific but not in conflict with the DOT, and the ALJ properly relied on that testimony in determining that Plaintiff is not disabled.

The Fifth Circuit's decision in *Carey v. Apfel* is on all fours with the facts of the instant case. *Carey*, 230 F.3d 131 (5th Cir. 2000). In *Carey*, the claimant's left arm was amputated below the elbow. *Id*. Carey objected to the ALJ's reliance on the vocational expert's testimony that he could perform certain identified jobs with the use of only one arm, claiming that such testimony conflicted with the DOT's descriptions. *Id*. at 135. The Fifth Circuit instructed that "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id*. at 145. The court found no actual conflict between the VE's testimony and the DOT because the DOT did not contain any requirement of

"bilateral" use of the upper extremities, and the VE specifically testified that the subject jobs could be performed with the use of only one arm and hand. *Id*. at 146.

Here, as in *Carey*, the vocational expert's unchallenged testimony that the Plaintiff could perform the identified jobs with the added limitation of frequently reaching, handling, and fingering with her left upper and non-dominant extremity is tantamount to "more specific vocational expert testimony with respect to the effect of an individual claimant's limitations." Docket 7 at 58; *Carey*, 230 F.3d at 145. Further, the DOT's descriptions for cashier, wiper, and bagger do not contain any requirement of "bilateral" use of the upper extremities, and thus, the VE's more specific testimony is not in conflict with the DOT. In the context of the record as a whole, the VE's testimony is adequate to support the ALJ's determination that Plaintiff could perform available work and is not disabled.

## V. CONCLUSION

The Court finds that the ALJ properly discounted Dr. Tucker's opinion as it was not supported by record evidence. The record contained sufficient medical evidence from Dr. Adams, as well as from Dr. Tucker's records, to enable the ALJ to properly formulate Plaintiff's RFC. There was no actual conflict between the VE's testimony and the DOT. The identified jobs did not contain any requirement of bilateral fingering ability or dexterity, and the VE testified that the identified jobs could be performed with limited use of Plaintiff's non-dominant extremity. Because the ALJ's decision was supported by substantial evidence, the Court affirms the decision of the Commissioner.

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 13th day of January, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE